Judge Owsley
delivered the Opinion of the Court.
This is an appeal from a decree dismissing a bill brought by Craig, in the court below, against the heirs of Robert Johnson, deceased.
The appellees hold under an adverse claim, and the object of Cr.aig’s bill, was to obtain from them a conveyance of their .legal title to two hundred and fifty acres of land, part of a survey of one thousand acres, made under an entry for that quantity of acres in the name of John Hawkins Craig.— The entry of John Hawkins Craig was made the 12th of December, 1782—
‘¿Beginning at the lower end of the first, big hot-tom above James Southall’s entry, running up the river and binding on the same as far as the law allows for quantity-.”
James Southall’s entry was made the 29th of May, 1780, “and is for one thousand acres, calling to lie on the Ohio, about twenty miles below the big bone lick creek, beginning at a hoopwood and hickory, on the river bank, running the courses thereof, five hundred and forty poles, and back for quantity.”
pujiiim! oi ill's c-vHenef; y ¡ívrs ¡1 the iuwcf ou'.l of a r.erliii.i big bol fora on the Oblo?, i.ncllivid not to bo at I'rio movilii of is ceriaia creek, becruv'-e iky bottom soomoil to'ok lend larthi.r down, bul at a point bdioW, ÍÍAl'd by the testimony ,
Tiie survey which was made upon Craig’s entry.. begins on the bank of the Ohio river, one hundred: and thirty six poles below the mouth of Craig’s creek, and includes the bottom upon which the town of Fredoricksburgh stands. Without stopping to inquire where SouthalF-s entry lies, it may., as respects the present contest, be tafeen for granted, that the bottom upon which Craig’s survey was made, is the first large bottom on the Ohio, above the entry of Southall. Place Southall twenty miles below the big bone creek, and.from thence ascending the river, yoii pass no big hot,torn until von arrive at the one upon which Craig’s survey is made.
Wo shall, therefore, assume the fact to be, that the locates of Craig's entry intended to make the lower end of ihe bottom upon which Craig has actually surveyed, the beginning of his entry, so that in deciding upon tiie equity asserted by Craig thro’ liis entry, it is barely necessary to ascertain whether or not bis survey conforms to the calls of his entry. This question must, we apprehend, he answered in the negative. instead of beginning, as it does, one hundred and thirty six poles below the mouth of Craig’s creek, the survey, to have conformed to the entry, should have begun at thelower end of the bottom. With respect to the precise point at which the bottom terminates below, there is considerable difference of opinion between the witnesses whose depositions have been taken in the cause.
Whilst some of them point to. the mouth of Craig’s creek, as the lower end of the bottom, others fix it at the mouth of a gut, about two hundred poles below. Between these conilicting opinions, we feel constrained to adopt tiie. latter, as conforming better with the actual posilion of the bottom. Tn point of fact, there is a bottom below the mouth of Craig’s creek, and though it may be said to be seporated from the bottom above, by the creek, it must be understood to form part of the big bottom on flic Ohio, through which the creek passes.— Such, we think, from the evidence in the cause, would, most probably be the opinion of a majority qf those who might desire to appropriate the adja *325 cent residuum, and such must have been the understanding of Craig, or he would have commenced his survey at the mouth of Craig’s creek.
Craig’s claim, under dofcuilanl’s title by purchase for thcyaxos,and contract with Johnson.
The survey of Craig should, therefore, have been made to ¡begin at the mouth of the gut, below' the month of Craig’s creek, and when so begun and run in conformity to his entry, no part of the land in contest, will be included. Jt consequently follows, that in virtue of the entry, Craig cannot be entitled to any relief.
But it is not through that entry only, that relief is sought by the complainant in the court below, lie states, in his bill, that whilst the entire survey belonged to John Hawkins Craig, his agent, George Turner, purchased for him, at a sale for direct taxes, two thousand, five hundred acres of land, part of surveys, including a greater quantity, made for John Moseby; that the purchase so made, includes Craig’s survey of a thousand acres, and a still greater quantity of Moseby’s, in which Robert Johnson, the defendants’ ancestor, had an interest, and was agent for Moseby; and that being desirous of quieting his claim of all controversy with Moseby, Craig concluded an agreement with Johnson for himself, and as agent for Moseby, whereby it was stipulated, that the certificate of purchase held by Craig, should be surrendered up to Johnson, and the claim of Moseby, so far as it interferred with Craig, should be surrendered to Craig. The complainant also states in his bill, that in pursuance of that agreement,, Johnson executed a writing to John Ilawkins Craig, and that when he was aboqt to purchase the land now in contest, fyom John H. Craig, perceiving that the writing which Johnson liad executed was somewhat ambiguously expressed, and wishing to avoid legal controversy, he refused to conclude the purchase, without further evidence from Johnson, of his contract withJonn B. Craig; that Johnson gave an additional writing, upon the receipt of which, lie concluded the purchase, and he insists, that under those writings, the defendants should he compelled to surrender their title, though the, entry of John li. Craig, be adjudged not to include the land in contest.
Held on the face of the writings, that the agreement between Craig and Johnson, was on]y that the surrender by Craig, of his certificate of purchase of Johnson’s claim for taxes, should not effect Craig’s claim, leaving Johnson’s claim also unaffected to the interference between •.heir grants; and so this ground of complaint overruled.
Claim under ■¡¡he purchase for the taxes not support-<4
Eaggin for appellant; Crittenden for appellees.
Upon this branch of the cause, we have looked into the writings executed by Johnson, and after the most careful examination, we have been utterly incapable of discovering any thing in them, which, upon any principle of interpretation, can be construed to have the effect contended for on the part of the complainant. Each of the writings acknowledge the receipt, by Johnson, of an assignment from Craig, of bis certificate of purchase, anti go to shew, that notwithstanding the assignment, Craig was st^l entitled to the benefit of the certificate, so far as the land of which the certificate was evidence of his purchase, included his survey of one thousand acres; but neither writing, contains a solitary expression indicating, in the slightest degree, an intention, on the part of Johnson, to surrender to Craig, the claim of Moseby.
The only effect the writings, given by Johnson, can therefore have, is to preserve to John 23. Craig, the beneficial interest, in so much of his certificate of purchase, for the direct tax, as includes his survey of one thousand acres.
And of course, through those writings, the complainant can have derived no equity, unless the sale of which the certificate is the evidence, is proved to have been made in conformity to law. Nothing of this sort, is however, attempted by the complainant — He has not even alleged, in his bill, that the sale for the taxes was duly and regularly made, nor has he attempted to introduce any evidence upon the subject.
The bill of the complainant, was therefore, correctly dismissed, and the decree must, consequently, be affirmed with cost.